UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

DAVID MARC RATCLIFF,

    Petitioner,

V.

USP BIG SANDY,

    Respondent.

Civil Action No. 7: 17-151-KKC

**MEMORANDUM OPINION
AND ORDER**

\*\*\* \*\*\* \*\*\* \*\*\*

Federal inmate David Ratcliff has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. [R. 1] This matter is before the Court to conduct the initial screening required by 28 U.S.C. § 2243. *Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011).

**I**

On October 16, 2016, Ratcliff came to the office of Chaplain Alexis and complained that Jewish inmates were holding Sukkot in an area he claimed was reserved for adherents to Asatru.[1] Chaplain Alexis explained that the area was available for use by inmates of all faiths. Ratcliff then stated that Chaplain Barlow had "promised him the area," and that if the area was not reserved for Asatru, there would be "a threat to the safety and security of the prison." Chaplain Alexis alleged that Ratcliff then stated that "one of his guys" had knocked over a tent, and that they would set it on fire if it was not removed. [R. 1-1 at 1]

Chaplain Barlow later denied making any statement to Ratcliff that he and his group were entitled to exclusive use of the area. In accordance with directions from his supervisor,

---

[1] Asatru is a polytheistic religion in which adherents worship ancient Germanic gods, including Thor, Odin, and Freya. See https://simple.wikipedia.org/wiki/Asatru.

1

Chaplain Alexis issued Ratcliff an Incident Report charging him with Prohibited Act Code 299, Conduct which Disrupts the Orderly Running of the Institution (Most Like Code 212, Engaging in or Encouraging a Group Demonstration). *Id*.

Five days later, a Disciplinary Hearing Officer ("DHO") held a hearing on the Incident Report. During the hearing, the DHO concluded that the charged conduct was more like Prohibited Act Code 203, Threatening, advised Ratcliff of this fact, and amended the Incident Report to so reflect. In response, Ratcliff denied guilt and stated only "I deny saying my people knocked down the tent and I didn't say I would set it on fire." [R. 1-2 at 2-3] In sum, Ratcliff contended that Chaplain Alexis lied or had misrepresented his statements.

In assessing Ratcliff's culpability for the offense, the DHO concluded that his statements were threatening because they constituted a "communication of an intent to inflict physical or other harm on any person or property." The DHO considered photographs of the knocked-down tent, a written statement from another inmate, Chaplain Alexis's report, and Ratcliff's denial. The DHO found Ratcliff guilty of threatening because he "clearly stated the Jewish tent would be burned if it is not removed from the area. This type of behavior is considered very hostile, aggressive, disrespectful and threatening." The DHO imposed various sanctions which included the loss of 27 days of good conduct time. [R. 1-1 at 3-4]

II

Ratcliff asserts three claims in his petition. In the first, he contends that he was unable to adequately defend against the Code 203 charge of Threatening because the Incident Report was amended to reflect that charge during the DHO hearing. Second, Ratcliff complains that as a result of the disciplinary conviction, his custody level has been increased "for history of violence." Finally, Ratcliff asserts that his statements did not provide sufficient evidence to support a disciplinary conviction for threatening under Code 203. [R. 1 at 6-7]

As a preliminary matter, Ratcliff's second claim – which challenges an increase in his custody level as a result of his disciplinary conviction – is not cognizable in this habeas proceeding. Such concerns relate not to the duration of a prisoner's sentence, but to the conditions of his confinement, and hence must be pursued under the civil rights statutes. *McCall v. Ebbert*, 384 F. App'x 55, 57-58 (3d Cir. 2010) (prisoner's challenge to security classification and resulting prison transfer may not be pursued under § 2241); *McCarthy v. Warden, USP Lewisburg*, 417 F. App'x 128, 129-30 (3d Cir. 2011) (same); see also *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004); *Simmons v. Curtin*, No. 10-CV-14751, 2010 WL 5279914, at *2 (E.D. Mich. Dec. 17, 2010); *Taylor v. Ives*, No. 11-CV-256, 2012 WL 6506995, at *2 (E.D. Ky. Dec. 12, 2012) (collecting cases); *McCrary v. Rios*, No. 08-CV-206-ART, 2009 WL 103602, at *3-4 (E.D. Ky. 2009).

When a prison disciplinary board revokes or orders forfeit a prisoner's good time credits, the Due Process Clause requires prison officials to provide the prisoner with advance notice of the charges and the opportunity to present evidence in his or her defense, and to issue a written decision explaining the grounds used to determine guilt or innocence of the offense. *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974). The board's findings used as a basis to revoke good time credits must also be supported by some evidence in the record. *Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *Selby v. Caruso*, 734 F. 3d 554, 559 (6th Cir. 2013).

With respect to Ratcliff's first claim, the amendment of the Incident Report to reflect a revised charge of Threatening did not, without more, violate Ratcliff's constitutional rights. Indeed, BOP regulations affirmatively permit such an amendment by the hearing officer: a DHO may find that a prisoner "[c]ommitted the prohibited act(s) charged, *and/or similar prohibited act(s) as described in the incident report.*" 28 C.F.R. § 541.8(a) (emphasis added). Where the inmate's conduct may constitute more than one different disciplinary offense, neither the reporting officer nor the DHO violates any right of the prisoner merely by choosing among

them.  *Booker v. Quintana*, No. 5: 15-CV-244-DCR (E.D. Ky. Mar. 28, 2016), *aff'd*, No. 16-5532 (6th Cir. Jan. 19, 2017); *Harvey v. Wilson*, No. 6: 10-CV-235-GFVT, 2011 WL 1740141, at *9 (E.D. Ky. 2011) (citing *Yates v. Young*, 772 F.2d 909, 1985 WL 13614 (6th Cir. 1985).  Here, the underlying factual basis for the original and amended charges remained the same throughout the proceedings, and Ratcliff points to neither fact nor argument that he was unable to assert in his defense during the hearing as a result of the amendment.  He was therefore not prejudiced in his ability to defend himself against the charge of threatening.  *Navedo v. Holt*, No. 4: 08-CV-2150, 2009 WL 2007138, at *6 (M.D. Penn. July 6, 2009) ("the DHO was authorized to amend the charged offense from Code 111 to Code 113 since Petitioner's conduct proven by the evidence was more similar to the elements of the latter offense."); *Davis v. O'Brien*, No. 7: 08-CV-200, 2008 WL 631172, at *2 (W.D. Va. March 7, 2008); *Marin v. Bauknecht*, No. 8: 07-0165-JFA-BHH, 2007 WL 3377152, at *3 (D.S.C. Nov. 9, 2007).  Under circumstances such as these, the change in the offense charged does not establish a viable claim for habeas relief.[2]

Ratcliff's third and final claim is that his disciplinary conviction for threatening was "not supported by the record" because the threat alleged threat was harm to a tent – property – and not against a person through bodily harm.  But the BOP's Code 203 prohibits "[t]hreatening another with bodily harm *or any other offense*."  28 C.F.R. § 541.3 Table 1 (emphasis added); see also BOP Program Statement 5270.09, Table 1 at pg. 3 (July 8, 2011).  The terms of the section are thus not limited to threats of bodily harm, but include any threat to commit any another disciplinary offense.  In this context, the DHO could readily conclude that the "other offenses" threatened by Ratcliff might include encouraging a group demonstration (Code 212), or damaging or altering property (Code 218).

---

[2] Even if this were not so, Ratcliff was subject to the same disciplinary sanctions for a 200-level offense regardless of how his conduct was characterized.  Ratcliff's menacing statements could have been written up as a threat (Code 203), extortion (Code 204), encouraging a group demonstration (Code 212), damaging or altering property (Code 218), or disruptive conduct "most like" any one of these (Code 299).  Even if Ratcliff had been found guilty of the most benign of these offenses, Code 299, he would have suffered the same mandatory loss of 27 days good conduct time because he was sentenced in 1998 under the PLRA.  See 28 C.F.R. §541.4(b)(2).

The Sixth Circuit has emphasized that to support a prison disciplinary conviction, "[s]ome evidence is all that is needed. ... the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Williams v. Bass*, 63 F. 3d 483, 486 (6th Cir. 1995) (citations and internal quotation marks omitted). To determine if a decision is supported by "some evidence," the Court does not conduct an independent review of the evidence or assess the credibility of witnesses. It asks only "whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56; *Higgs v. Bland*, 888 F. 2d 443, 448-49 (6th Cir. 1989). Here, the DHO was possessed of photographs confirming that, as Ratcliff allegedly told the chaplain, someone had knocked down the tent in the common area. In addition, he also had Chaplain Alexis's written statement that Ratcliff then told him that "one of his guys" would set it on fire if it was not removed. Ratcliff's thinly-veiled threat to have the tent burned down provided the DHO with more than "some evidence" to support a disciplinary conviction for Code 203 Threatening.

Accordingly, **IT IS ORDERED** that:

1. Petitioner David Ratcliff's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [R. 1] is **DENIED**.

2. This action is **DISMISSED** and **STRICKEN** from the Court's docket.

3. Judgment shall be entered contemporaneously with this Memorandum Opinion and Order.

Entered March 15, 2018.



KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY